**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARK RODRIGUES,　　Plaintiff,　　v.　MOTORWORLD AUTOMOTIVE GROUP, INC., t/b/d/a MOTORWORLD et al.,　　Defendants. | CIVIL ACTION NO. 3:16-CV-1674　(JUDGE CAPUTO) |

## MEMORANDUM

Presently before the Court is a Motion to Dismiss filed by Defendant William "Bill" Smith (Doc. 19). For the reasons that follow, Defendant Smith's Motion will be granted in part and denied in part.

### I. Background

The facts as set forth in Plaintiff's Complaint (Doc. 1) are as follows:

Plaintiff Mark Rodrigues is a Pennsylvania resident who was formerly employed by Defendant Motorworld. (Compl. ¶¶ 1-2.) Plaintiff, who is "Italian, Portuguese, Latino, and Caucasian," began working as a sales associate for Defendant Motorworld in April 2014. (*Id.* ¶¶ 18-19.)

As soon as Plaintiff began working at Motorworld, Defendant Josh Cannon, a co-worker, asked Plaintiff: "What are you[,] Mexican?" (*Id.* ¶ 20.) Plaintiff corrected Cannon by informing him that he was Portuguese and that his last name ended with an "S," not with a "Z." (*Id.* ¶ 21.) Thereafter, Plaintiff was referred to as "Portuguese Penis," "Portuguese Prince," and his national origin was treated as a joke. (*Id.* ¶¶ 22-23.) When Plaintiff complained to some colleagues that he was being treated differently and being singled out, Cannon said: "[T]hat's because you are Mexican." (*Id.* ¶ 25.)

Defendant Joe Zakowski, another co-worker, made fun of Plaintiff's Portuguese heritage in front of colleagues and customers on a consistent basis. (*Id.* ¶ 24.) At times, customers referred to Plaintiff as "the Portuguese guy." (*Id.* ¶ 56.)

Around July 2014, Plaintiff complained to Defendant Bill Smith, a manager at Motorworld, and informed Smith about the offensive comments directed toward him. (*Id.* ¶¶ 26-27.) In response, Smith laughed and said that the person making the comments was "only joking around with you." (*Id.* ¶ 28.) Smith did nothing to stop the comments from being made and laughed at such comments when he would hear them. (*Id.* ¶¶ 29, 31-32.) Offensive comments about Plaintiff were made on a regular basis. (*Id.* ¶ 33.)

Plaintiff eventually spoke with Cheryl Orvick, the HR manager, at the beginning of May 2015. (*Id.* ¶ 35.) By this time, Plaintiff had a new manager, Defendant Stuart Lebowitz. (*Id.* ¶ 36.) After Plaintiff complained to HR, Orvick went to complain to Defendant Bob King, the president of Motorworld. (*Id.* ¶¶ 38-39.) A meeting took place between Plaintiff, Lebowitz, Orvick, and King. (*Id.* ¶ 40.) Prior to this meeting, Lebowitz singled out Plaintiff and told him that he could not wear his black casual dress shoes despite the fact that other people wore sneakers. (*Id.* ¶¶ 42-43.)

Management at Motorworld cut the profit so that Plaintiff would sell more cars at less profit to himself, but Lebowitz would get his bonus because of the increase in car sales. (*Id.* ¶ 45.) Plaintiff was the only employee who had his profit reduced by Lebowitz. (*Id.* ¶ 46.) Additionally, when Plaintiff was late to work on one occasion, Lebowitz singled him out for his tardiness, despite the fact that other employees had come in late without reprimand. (*Id.* ¶¶ 50-52.) Lebowitz also singled out Plaintiff during the weekly Saturday sales meeting by making statements about the way he dressed and his need to work harder. (*Id.* ¶¶ 53-54.)

Plaintiff resigned on Memorial Day 2015. (*Id.* ¶ 57.) Plaintiff timely filed a written charge of discrimination with the Philadelphia office of the Equal Employment

Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). (*Id.* ¶ 13.) The EEOC mailed Plaintiff a Right to Sue Letter on or about May 16, 2016. (*Id.* ¶ 14.)

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

3

The inquiry at the motion to dismiss stage is "normally broken into three parts:  (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

4

### III. Discussion

Plaintiff filed the instant lawsuit on August 12, 2016. (Doc. 1.) The Complaint names seven Defendants, including moving Defendant Smith. Count I raises a claim of unlawful discrimination on the basis of race, color, and national origin, and a claim for retaliation, against Defendant Motorworld, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq. Count II alleges claims of race discrimination and retaliation against all Defendants, in violation of 42 U.S.C. § 1981. Count III raises claims of discrimination and retaliation against all Defendants under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq. On September 30, 2016, Smith filed a Motion to Dismiss (Doc. 19), seeking to dismiss Counts II and III of Plaintiff's Complaint and strike the request for punitive damages. Plaintiff filed his Brief in Opposition (Doc. 29) on November 11, 2016, and Smith filed his Reply Brief (Doc. 30) on November 25, 2016. The Motion is ripe for disposition.[1]

**A.     Defendant Smith's Motion to Dismiss Count II Will Be Denied**

Smith seeks to dismiss Count II of Plaintiff's Complaint alleging race discrimination and retaliation in violation of 42 U.S.C. § 1981 on the grounds that: (1) Plaintiff failed to plead the existence of a contract; (2) Plaintiff's employment relationship with Defendant Motorworld is insufficient to hold Smith liable under § 1981; and (3) Plaintiff fails to plead facts demonstrating Smith intended to discriminate against Plaintiff on the basis of race. (Br. in Supp. 5-8, Doc. 26.) For the following reasons, Smith's Motion to Dismiss Count II will be denied.

---

[1] The Court recently conducted a substantially similar analysis with respect to a Motion to Dismiss filed by Defendant Smith in an analogous case. *See Suero v. Motorworld Auto. Grp.*, No. 3:16-cv-00686, 2017 WL 413005 (M.D. Pa. Jan. 31, 2017). Because many of Smith's legal arguments are similar or identical to those raised and addressed in the Court's earlier opinion, the Court's analysis borrows from that opinion where appropriate.

Section 1981[2] prohibits race discrimination in the making and enforcing of contracts. *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 302 (1994). In order to state a claim under § 1981, a plaintiff must plead sufficient facts in support of the following elements: (1) plaintiff is a member of a racial minority; (2) defendant intended to discriminate on the basis of race; and (3) defendant's discrimination concerned one or more of the activities enumerated in the statute, which includes the right to make and enforce contracts.[3] *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001). Unlike claims brought under Title VII, private individuals can be held liable for violating § 1981, *see Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001), so long as there is "some affirmative link to causally connect the actor with the discriminatory action." *Jean-Louis v. Am. Airlines*, No. 08-CV-3898, 2010 WL 3023943, at *4 (E.D.N.Y. July 30, 2010) (citation omitted). However, "the substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII." *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009).

A right to relief under § 1981 can be shown by (1) purposeful racial discrimination; (2) a hostile work environment based on racial harassment; or (3) retaliation. *Ellis v. Budget Maint., Inc.*, 25 F. Supp. 3d 749, 753 (E.D. Pa. 2014). At bottom, claims brought under § 1981 require proof of purposeful or intentional racial discrimination. *Collins v. Christie*, No. 06-4702, 2008 WL 2736418, at *10 (E.D. Pa. July 11, 2008) (citing *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982)). But in order to survive a motion to dismiss, a plaintiff need not establish a full *prima facie* case; "[i]t suffices for her to plead facts that, construed in her favor, state a claim of discrimination

---

[2]   42 U.S.C. § 1981 states in relevant part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts. . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . ."

[3]   Smith concedes that Plaintiff alleges sufficiently that he is a member of a racial minority. (Br. in Supp. 7, Doc. 26.)

that is plausible on its face." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016) (quotation omitted).

Smith first contends that Plaintiff has failed to prove the existence of a contract triggering liability on the part of Smith under § 1981. However, Plaintiff's allegation that Smith's discrimination interfered with his at-will employment satisfies the requirement that a defendant's racial discrimination concern an activity enumerated in the statute. A "party can be liable under § 1981 if that party intentionally interferes, on the basis of race, with another's right to make and enforce contracts, regardless of whether the employer or anyone else may also be liable." *Collins*, 2008 WL 2736418, at *10. The statute defines "make and enforce contracts" to include the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42. U.S.C. § 1981(b). The district court in *McClease v. R.R. Donnelly & Sons Co.* undertook a detailed analysis of whether the term "contract" encompassed at-will employment under the statute. 226 F. Supp. 2d 695 (E.D. Pa. 2002). Noting first that "[e]very appellate court that has examined the legislative history of [42 U.S.C. § 1981, as amended in 1991] has concluded that Congress intended the term 'contract' to encompass at-will employment," the court determined that the legislative history clearly evidenced an intent for the term "contract" to include at-will employment. *McClease*, 226 F. Supp. 2d at 701-02; *see Jean-Louis*, 2010 WL 3023943, at *3 (noting that at-will employees "have contractual rights that may be enforced through § 1981"). The Court agrees with its sister courts that the term "contract" as used in the statute includes at-will employment. Plaintiff's allegations thus satisfy the enumerated activity requirement.

Smith next argues that Plaintiff has failed to plead facts that demonstrate he intended to discriminate against Plaintiff on the basis of race. (Br. in Supp. 7-8.) The Third Circuit has held that individual employees may be liable under § 1981 if they "are personally involved in the discrimination . . . and if they intentionally caused [an

7

infringement of plaintiff's] section 1981 rights, or if they authorized, directed, or participated in the alleged discriminatory conduct." *Al-Khazraji v. Saint Francis Coll.*, 784 F.2d 505, 518 (3d Cir. 1986). Individual liability may lie "regardless of whether the corporation may also be liable." *Id.* Accordingly, employees may be held individually liable if they were "personally involved" in the discriminatory conduct at issue, and either "intentionally caused" the infringement of the plaintiff's § 1981 rights or "authorized, directed, or participated in the alleged discriminatory conduct." *Id.*; *see Brown v. TD Bank, N.A.*, No. 15-5474, 2016 WL 1298973, at *9 (E.D. Pa. Apr. 4, 2016). A supervisor may be found to have been personally involved with the discriminatory conduct if he was "grossly negligen[t] in the supervision of [his] subordinates who committed the wrongful acts" or "deliberate[ly] indifferen[t] to the rights of [plaintiff] by failing to act on information indicating that unconstitutional acts were occurring." *Aboudekika v. Del. River & Bay Auth.*, No. 10-5830, 2011 WL 5080216, at *2 (D.N.J. Oct. 25, 2011) (citation omitted); *see Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004) ("Personal involvement, within the meaning of this concept, includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring.").

The allegations in the Complaint, accepted as true and construed in a light most favorable to Plaintiff, indicate Smith possessed the requisite intent to discriminate and was personally involved in the alleged discriminatory conduct. The Complaint states that Plaintiff complained to Smith, a manager at Motorworld, in July 2014 about the offensive comments that co-workers were directing at Plaintiff on an almost daily basis, which specifically included referring to Plaintiff as "Portuguese Penis" and "Portuguese Prince" and calling him a "Mexican" in an intentionally offensive manner. (Compl. ¶¶ 22-26, 33.) In response, Smith laughed and told Plaintiff those comments were only jokes. (*Id.* ¶ 28.) Despite being a supervisor, Smith did nothing to stop the comments from continuing, and also would laugh at such comments when he heard them being made. (*Id.* ¶¶ 29,

31-32.) Plaintiff alleges that the persistence of racially offensive comments and discriminatory treatment ultimately resulted in his constructive discharge on Memorial Day 2015. (*Id.* ¶¶ 57, 64.)  A manager's deliberate indifference to, or participation in, a subordinate's acts of racially-motivated conduct can satisfy the element of intent necessary to give rise to individual liability under § 1981. *See Cardenas v. Massey*, 269 F.3d 251, 269 (3d Cir. 2001). And the Complaint sufficiently alleges Smith's personal involvement in the discriminatory conduct. *See Francis v. Atlas Machining & Welding, Inc.*, No. 11-6487, 2013 WL 592297, at *4 (E.D. Pa. Feb. 15, 2013) (finding defendants could be held individually liable under § 1981 for failing to respond to reported instances of verbal harassment); *Garner v. N.E.W. Indus., Inc.*, No. 13-C-0569, 2013 WL 6806186, at *2 (E.D. Wis. Dec. 19, 2013) (citing *Francis*, 2013 WL 592297, at *4 ("[T]he plaintiff alleges that he complained to [a supervisor] about the harassment and that [the supervisor] did not take action to prevent the hostile work environment from persisting. This is sufficient to allege personal involvement under section 1981.")).

Accordingly, the Court will deny Smith's Motion with respect to Count II.

**B.    Defendant Smith's Motion to Dismiss Count III Will Be Granted**

Smith argues that Plaintiff's claim under the Pennsylvania Human Relations Act ("PHRA") in Count III must be dismissed as time-barred and for failing to sufficiently allege that Smith contributed to the discriminatory conduct. (Br. in Supp. 8-11.)

In support of his timeliness argument, Smith points out that Plaintiff has failed to state specifically when he filed his charge of discrimination with the EEOC. (Br. in Supp. 9; *see* Compl. ¶ 13 (alleging that Plaintiff "filed [a] timely written charge of discrimination," but not stating when this occurred).) As such, Smith contends that Plaintiff has failed to show that the "complaints" of discrimination which concern Smith occurred within 180 days of the date on which the charge of discrimination was filed. In response, Plaintiff's counsel admits that he currently does not have a time-stamped copy

of his charge, but asserts that it "appears to have been filed in or around July 2015." (Br. in Opp'n 9 n.4, Doc. 29.) Additionally, Plaintiff argues that, "if" the charge was indeed filed in July 2015, it is timely as it relates to Plaintiff's claim of a constructive discharge. Plaintiff further contends that the continuing violations doctrine should apply to his hostile work environment claim, and therefore his PHRA claim against Smith in his individual capacity should not be dismissed as time barred. For the reasons that follow, the Court will grant Smith's Motion and dismiss without prejudice Count III as to Smith.

Under the PHRA, supervisory employees may be held individually liable for "aiding and abetting" their employer's discriminatory practices. 43 P.S. § 955(e)[4]; *see Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C.*, 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998). Section 955(e) provides the "sole basis of individual liability in the PHRA." *Santai v. Fred Beans Ford, Inc.*, No. 10–2367, 2011 WL 3606836, at *3 (E.D. Pa. Aug. 16, 2011). Before a plaintiff-employee can file suit under the PHRA, he must first exhaust his claim by presenting it in an administrative charge to the PHRC. *Weems v. Kehe Food Distribs., Inc.*, 804 F. Supp. 2d 339, 341 (E.D. Pa. 2011) (citing *Antol v. Perry*, 82 F.3d 1291, 1295–96 (3d Cir. 1996)). A complainant must file a complaint with the PHRC within 180 days of the alleged act of discrimination. 43 P.S. § 959(h); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997). If a complainant fails to timely file a charge with the PHRC, he is precluded from the judicial remedies provided for under the PHRA. *Woodson*, 109 F.3d at 925; *Vincent v. Fuller Co.*, 616

---

[4] Section 955(e) forbids:
> [A]ny person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

A.2d 969, 974 (Pa. 1992). Pennsylvania courts "strictly interpret" this timely-filing requirement. *Woodson*, 109 F.3d at 925.

Under the continuing violations doctrine, "discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013). "[A]n act that falls outside the applicable limitations period may be deemed timely if a plaintiff shows that: (1) it is part of an 'ongoing practice or pattern of discrimination' by the defendant; and (2) the 'last act evidencing the continuing practice falls within the limitations period.'" *Oliver v. Clinical Practices of Univ. of Pa.*, 921 F. Supp. 2d 434, 443 (E.D. Pa. 2013) (citation omitted). Thus, in order to avail himself of the doctrine, a plaintiff must first demonstrate "that the last act of the *continuing practice*—not just any discriminatory practice—occurred within the limitations period." *Id.* at 444 n.11 (citing *Rush v. Speciality Gases, Inc.*, 113 F.3d 476, 481 (3d Cir. 1997)) (emphasis in original); *see Coe v. Pa. State Univ.*, No. 4:14-cv-01818, 2016 WL 1162344, at *9 (M.D. Pa. Mar. 24, 2016). Next, a plaintiff must show that the acts outside of the limitations period are part of an ongoing pattern or practice of discrimination, rather than discrete discriminatory acts. *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001).

As to Smith's timeliness argument, at the pleading stage the Court is satisfied that Plaintiff has met his burden. *See Kern v. Schuylkill Intermediate Unit 29*, No. 3:CV-08-1601, 2010 WL 235107, at *4 (M.D. Pa. Jan. 15, 2010) ("Details pertaining to the exhaustion effort are more properly the subject of discovery."). However, even assuming that Plaintiff's charge of discrimination was filed in or around July 2015, Plaintiff's PHRA claim against Smith is time barred because there is no plausible allegation that Smith engaged in any discriminatory behavior in the year 2015.[5] Moreover, Plaintiff's PHRA

---

[5]     This is true even if, *arguendo*, Plaintiff filed his charge of discrimination the day he resigned from Motorworld in May 2015.

claim against Smith in his personal capacity is not subject to the continuing violations doctrine.

If Plaintiff filed his charge in July 2015, as he now claims, discriminatory conduct occurring before January 2015 "falls beyond the reach of the limitations period unless otherwise covered by the 'continuing violation' theory." *Coe*, 2016 WL 1162344, at *9. With respect to Plaintiff's PHRA claim against Smith individually, Plaintiff has failed to plausibly allege any conduct on the part of Smith that occurred after July 2014. Thus, any claim against Smith individually under the PHRA is time barred unless it is subject to the continuing violations doctrine, which it is not. Even assuming Smith's alleged "aiding and abetting" constituted an ongoing practice or pattern of discrimination, the Complaint does not allege a single action or failure on the part of Smith that took place within the PHRA limitations period. *See Oliver*, 921 F. Supp. 2d at 444 n.11 ("[T]he last act of the *continuing practice*—not just any discriminatory practice—[must have] occurred within the limitations period."); *see also Coe*, 2016 WL 1162344, at *9 (continuing violations doctrine does not apply when no act of discrimination by the defendant is alleged to have occurred within the PHRA's 180-day limitations period). When read in a light most favorable to Plaintiff, the Complaint claims that Smith failed to respond to Plaintiff's complaints about receiving racially offensive comments and tacitly approved of his subordinates' racially discriminatory conduct in 2014, outside of the PHRA limitations period. (Compl. ¶¶ 26-33.) Although the Complaint also asserts vaguely that Smith "refused to talk to" Plaintiff at an unspecified time(s) (Compl. ¶ 49), it is not clear when this conduct occurred or whether it was part of a continuing practice of discrimination on the part of Smith.

Because Plaintiff has not alleged that at least one instance of Smith's aiding and abetting Motorworld's discriminatory practices took place within the PHRA limitations period, Plaintiff may not avail himself of the continuing violations doctrine with respect to his PHRA claim against Smith in his individual capacity. Accordingly, the Court will grant

Defendant Smith's Motion and dismiss without prejudice Count III of Plaintiff's Complaint as to Smith.

C. **Defendant Smith's Motion to Strike Plaintiff's Request for Punitive Damages Will Be Denied**

Lastly, Smith argues that Plaintiff's request for punitive damages should be stricken as to the claims against Smith. First, Smith notes correctly that punitive damages are not available under the PHRA. *See Hoy v. Angelone*, 720 A.2d 745, 751 (Pa. 1998). Accordingly, to the extent Plaintiff seeks punitive damages from Smith, or any other Defendant, for violations of the PHRA, such a request is stricken. Second, Smith contends that Plaintiff's request for punitive damages for Smith's alleged violation of 42 U.S.C. § 1981 should be stricken because the allegations do not establish that Smith acted with "extreme and outrageous behavior." (Br. in Supp. 11, Doc. 26.) Plaintiff argues that the request for punitive damages from Smith should not be stricken at this early stage. (Br. in Opp'n 10, Doc. 29.) The Court declines to strike Plaintiff's request for punitive damages from Smith at this juncture.[6]

---

[6] In support of his request for punitive damages, Plaintiff argues that the request is especially appropriate in light of a recent lawsuit involving Smith, in which another former employee of Motorworld alleged that, *inter alia*, Smith failed to take corrective measures after the employee complained about racial discrimination in the workplace. *See Charnitski v. Motorworld Grp.*, No. 10-cv-02024-MEM (M.D. Pa. Aug. 15, 2013). In deciding a motion to dismiss, courts may take judicial notice of facts that are "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, No. 1:12-cv-00993, 2016 WL 7117455, at *5 (M.D. Pa. Dec. 7, 2016) (quoting Fed. R. Evid. 201(b)). However, generally courts may not take judicial notice of findings of fact from another case. *See Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006); *IKB Int'l S.A. v. Bank of Am.*, No. 12-cv-4036, 2014 WL 1377801, at *7 (S.D.N.Y. Mar. 31, 2014). Therefore, the Court will not take notice of the arguments or factual assertions contained in the Exhibit attached to Plaintiff's Brief in Opposition (Doc. 29), and will strike all references to the findings of fact in the *Charnitski* case from Plaintiff's Brief.

A plaintiff may seek punitive damages from individual defendants for claims arising under 42 U.S.C. § 1981. *See Sec. & Data Techs., Inc. v. Sch. Dist. of Phila.*, 145 F. Supp. 3d 454, 469 (E.D. Pa. 2015) (citing *Bennis v. Gable*, 823 F.2d 723, 734 (3d Cir. 1987)); *Sharif v. MIQ Logistics, Inc.*, No. 3-cv-13-2983, 2014 WL 1653191, at *3 (M.D. Pa. Apr. 23, 2014). "The standard for punitive damages in a federal civil rights action . . . does not require 'outrageousness': a jury may 'assess punitive damages in [a civil rights action] when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Alexander v. Riga*, 208 F.3d 419, 430-31 (3d Cir. 2000) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)); *Sharif*, 2014 WL 1653191, at *3 ("A plaintiff may be entitled to punitive damage[s] . . . when his or her employer engages in discriminatory practices with 'malice or reckless indifference to the federally protected rights of an aggrieved individual.'") (citation omitted). In order to be subject to punitive damages for engaging in a discriminatory practice, a defendant must have "knowledge that he or she may be acting in violation of federal law," not merely "an awareness that he or she is engaging in discrimination." *Johnson v. Fed. Exp. Corp.*, 996 F. Supp. 2d 302, 321 (M.D. Pa. 2014) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999)).

Plaintiff plausibly alleges that he told Smith that he was being subjected to racially offensive comments by his co-workers, yet Smith, as a manager, did not attempt to take any remedial measures. Plaintiff further alleges that Smith did not care that Plaintiff was being subjected to discriminatory treatment and laughed when Smith's subordinates made racially offensive comments about Plaintiff. And Plaintiff asserts that this conduct was "deliberate" and "malicious." (Compl. ¶ e.) In light of Plaintiff's allegations, the Court declines to strike Plaintiff's request for punitive damages at this stage of the proceedings. *See Sharif*, 2014 WL 1653191, at *4. Smith may renew his objection to Plaintiff's request for punitive damages after the parties have engaged in discovery.

**D.    Leave to Amend**

The Third Circuit has instructed that if a complaint is vulnerable to a 12(b)(6) dismissal, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)). Here, because Plaintiff might be able to allege facts sufficient to state a claim under 43 P.S. § 955(e) against Smith, the Court will grant leave to amend that claim.

### IV. Conclusion

For the above stated reasons, Defendant Smith's Motion to Dismiss (Doc. 19) will be granted in part and denied in part.

An appropriate order follows.

| | |
|---|---|
| March 17, 2017 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo<br>United States District Judge |